IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 14, 2009

## DONTAE LAMONT BROWN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lauderdale County**
**No. 7923      Joseph H. Walker, III, Judge**

───────────────

**No. W2008-02348-CCA-R3-PC   -   Filed August 18, 2009**

───────────────

The petitioner, Dontae Lamont Brown, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of trial counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Rebecca S. Mills, Ripley, Tennessee, for the appellant, Dontae Lamont Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Tyler R. Burchyett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was convicted by a Lauderdale County jury of attempted first degree murder and aggravated assault for shooting a woman during an altercation. The trial court merged the convictions and sentenced the petitioner to an effective sentence of thirty-two years in the Department of Correction, and this court affirmed the convictions and sentence on direct appeal. See State v. Dontae Lamont Brown, No. W2006-01800-CCA-R3-CD, 2007 WL 2872268, at *1 (Tenn. Crim. App. Oct. 2, 2007), perm. to appeal dismissed (Tenn. Jan. 25, 2008). Our direct appeal opinion reveals that numerous witnesses testified at trial, with a number of them describing the two neighborhood fights that culminated in the death of the victim. After reviewing their individual testimony, we summarized the evidence in support of the convictions as follows:

We agree with the [petitioner] that many of the witnesses gave conflicting testimony, and we note that many were elusive in their answers to the State's and the

defense's questions. However, the evidence still establishes that the [petitioner] was present during a fight that occurred near Andrea Smith's apartment on May 25, 2005. During that fight, Andrea Smith fought with Teneka Barbee, and Tony Barbee fought with some men. Tony Barbee was struck in the head with a pistol, and the victim, Stephanie Barbee, Tony Barbee, and Teneka Barbee believed the [petitioner] was responsible. The [petitioner] left the scene of the first fight and returned to Trina Pearson's apartment, and the group followed him there. They confronted the [petitioner], who was holding a pistol, and demanded that he come off Pearson's porch. The victim then struck Pearson's car with the car jack. The [petitioner] told the victim to stop several times, but she refused. Several eyewitnesses testified that they saw the [petitioner] point the pistol at the victim and fire several shots, striking her once in the abdomen. Despite the [petitioner's] claim to the contrary, his confrontation with the victim and her hitting Pearson's car were motives for the shooting. Moreover, the [petitioner] possessed a handgun, pointed the gun specifically at the victim, and fired several shots at her. Taken in the light most favorable to the State, this evidence is sufficient to show that the [petitioner] shot the victim and that he acted intentionally and with premeditation. Thus, the evidence is sufficient to support the convictions.

Id. at *6.

On April 4, 2008, the petitioner filed a *pro se* petition for post-conviction relief in which he raised a claim of ineffective assistance of counsel. Following the appointment of post-conviction counsel, the petitioner filed an amended petition in which he alleged that trial counsel was deficient in her representation for failing to, among other things, adequately communicate with the petitioner; fully investigate and prepare the case, which included her failure to locate and contact a potential witness, Sammy Haley, "who could have proven [the petitioner's] innocence"and her failure to call an expert firearms witness "to testify as to the range of fire of the shells which hit the victim"; aggressively and fully cross-examine the State's witnesses; and fully inquire into the jurors' relationships with the victim. The petitioner alleged that these various deficiencies in trial counsel's performance prejudiced the outcome of his case, resulting in the denial of the effective assistance of counsel.

At the September 26, 2008, post-conviction hearing, trial counsel testified that she had been licensed to practice law for approximately eight years, was employed as a public defender, and had been appointed to represent the petitioner in circuit court after he had been represented by different counsel at the preliminary hearing. She met with the petitioner three times prior to his trial: twice at the prison in Tiptonville where he was incarcerated, and a third time after a pretrial hearing. She could not recall how long the third meeting lasted but said that the first meeting lasted approximately two hours while the second meeting, attended by her investigator, lasted close to three hours.

Trial counsel testified that the petitioner gave her the name of Sammy Haley, a man who had been charged in general sessions court in connection with the first fight, as a witness he wanted called in his behalf. The petitioner, however, was unable to provide her with an address for Haley, and her investigator was unable to locate him at the address listed on the general sessions warrant.

Trial counsel said that she found a Sammy Haley, Sr., in the jail, who informed her that he was the father of the man she sought. She stated that she gave him her business card and asked him to have his son contact her, but she never heard from him. When she informed the petitioner of the situation, he told her that Haley would be able to testify about the first fight but that he did not know if he would have anything to add about the second fight in which the victim had been shot. Trial counsel could not recall having ever discussed with the petitioner any theory that Haley had shot the victim and said they had instead focused on attempting to show that the victim had been accidentally shot by either Tony Barbee or other individuals who were shooting in the area of the second fight. As she recalled, the fact that Haley had shot a gun during the first fight was brought out at trial through the testimony of several defense witnesses.

Trial counsel testified that she shared and reviewed all the discovery she received with the petitioner, which included witness statements and police reports. She said she never had an official court transcript of the preliminary hearing but listened to the audiotape of the hearing and made her own notes, which she provided to the petitioner. In addition, she gave the petitioner a transcript that her secretary had prepared from the audiotape. Trial counsel testified that she and the petitioner discussed that their trial strategy would include pointing out the various discrepancies in the witness statements. She believed she thoroughly investigated the witnesses' backgrounds with respect to any prior convictions that could be used to impeach their credibility and that she aggressively cross-examined them with respect to the discrepancies and inconsistencies in their accounts of the crime.

Trial counsel could not recall the petitioner's having requested that she pose any specific questions to the witnesses at trial or having ever asked her to call any firearms or medical expert to testify with respect to the location of the shells or whether the victim's wound came from a near or distant gunshot. She also had no memory of the petitioner's having told her the victim had acknowledged one of the jurors at trial. Trial counsel stated that her practice was always to ask potential jurors if they know the alleged victim and to ask the defendant if he has any problems with any potential juror. She did not recall and had nothing in her notes to indicate that the petitioner voiced any complaints about the jurors. Trial counsel testified that she would not have kept someone on the jury if the petitioner had suggested that the individual was acquainted with the victim.

The petitioner testified that trial counsel's first and second meetings with him lasted only thirty minutes each. He acknowledged that she sent him the witness statements and brought him some handwritten notes and typewritten material, but complained that the handwriting was difficult to understand. In his opinion, she did not aggressively cross-examine the witnesses or adequately explore their relationships to each other or the inconsistencies in their statements. The petitioner said that he asked trial counsel to have a physician testify with respect to whether the victim's wound was a close or distant gunshot, because the victim testified that she was shot at close range while other witnesses said the gunshot was fired from a distance. However, no expert testified in his behalf.

The petitioner stated that he told trial counsel after the jury was picked that one of the jurors had smiled at a member of the victim's family, but trial counsel did nothing about it. Finally, the petitioner expressed his belief that trial counsel could have located Sammy Haley had she really tried: "Because it was something that she was able to find everybody who had something negative to say, but . . . when it came down to finding Mr. Haley, it wasn't possible. They stated it wasn't

possible for him to be found." On cross-examination, the petitioner testified that one of his relatives had spoken to Haley's brother, who reported that Haley wanted to testify at trial that the petitioner did not have anything to do with the victim's shooting. The petitioner acknowledged, however, that he had not spoken to Haley and therefore did not know exactly what testimony he would have offered at trial.

On September 29, 2008, the post-conviction court denied the petition on the basis that the petitioner had not met his burden of showing either deficiency in counsel's representation or prejudice resulting to his case. Thereafter, the petitioner filed a timely notice of appeal to this court.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine

confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

In a conclusory argument, the petitioner contends on appeal that trial counsel provided ineffective assistance by failing to adequately meet with him, carefully screen the jury, call an expert witness to testify at trial, and aggressively argue the discrepancies and conflicting testimony of the witnesses. However, trial counsel's testimony, which was obviously accredited by the post-conviction court, established that she met with the petitioner for over five hours, during which time she reviewed with him the discovery in the case and discussed how their trial strategy would include attempting to point out the various inconsistencies in the witness statements. She could not recall the petitioner's mentioning any problem with a juror, requesting an expert witness, or suggesting specific questions for her to ask of witnesses on cross-examination. Trial counsel believed that she aggressively and effectively cross-examined the witnesses and pointed out that the fact that Sammy Haley had fired a weapon during the first fight was brought out by one of the defense witnesses at trial. She said that both she and her investigator attempted to locate Haley but were unsuccessful. In its ruling, the post-conviction court specifically found that trial counsel exercised due diligence in her attempts to locate Haley and that the petitioner had not shown that Haley's testimony would have changed the outcome of his trial. The record fully supports these findings. In sum, the petitioner has not shown either a deficiency in counsel's performance or resulting prejudice to his case.

## CONCLUSION

We conclude that the petitioner has not met his burden of showing that he received ineffective assistance of counsel. Accordingly, we affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE